**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1580-WJM-KMT

TAYLOR F., by and through her parents and next friend JON F, next friend MARYANN F.,

    Plaintiffs,

v.

ARAPAHOE COUNTY SCHOOL DISTRICT 5,

    Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION**

    Plaintiffs Jon F. and Maryann F. bring this action as parents and next friends of Taylor F. (collectively "Plaintiffs") against Arapahoe County School District 5 ("District") pursuant to the Individuals with Disabilities Education Act ("IDEA") seeking a mandatory preliminary injunction ordering the District to pay for Taylor's schooling at the Denver Academy.  (Compl. (ECF No. 1).)

    Before the Court is Plaintiffs' Motion for Mandatory Preliminary Injunction ("Motion").  (ECF No. 4.)  The Court held an evidentiary hearing on the Motion on July 12, 2013 and took the Motion under advisement.  (ECF No. 17.)  For the reasons set forth below, the Motion is granted.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiffs Jon and Maryann F., bring this action as parents and legal guardians of Taylor F., a minor child that suffers from ADHD, learning disabilities, and anxiety.

(Compl. ¶ 7.)  Taylor has been a student in the District since 2nd grade and has had an Individualized Education Plan ("IEP") since 2003.  (*Id*. ¶ 8.)

When Taylor transitioned from elementary to middle school in the sixth grade (school year 2009-10), she struggled with the class size and the pace of instruction.  By seventh grade (2010-11), she was flunking most of her classes, was bullied and teased by her classmates, and was unable to understand most of the instruction.  (*Id*. ¶ 9.)  In December 2010, Plaintiffs removed Taylor from the District and placed her at Denver Academy.  (*Id*. ¶ 10.)  Denver Academy is a private school with smaller classes that focus on educating students with learning difficulties.  (*Id*. ¶ 11.)

In May 2011, the parties entered into a Settlement Agreement ("Settlement") that governed the 2010-11 and 2011-12 school years.  (ECF No. 9-1.)  The Settlement provided that Plaintiffs would assume full responsibility for her education for the 2010-11 and 2011-12 school years.  In return, the District paid Plaintiffs $16,681.  (*Id*.)  Plaintiffs waived their right to the IEP process and released the District from any obligation to review, prepare, or develop an IEP for these school terms.

With regard to the parties' obligations after the 2011-12 school year, the Settlement provided:

> **Fall Term: 2012; IEP Process; Agreement Concerning "Current Educational Placement."**  Prior to May 1, 2012, the Parents will contact the District Executive Director of Student Achievement Services in writing and advise the Executive Director and expressly state if they intend to return the Student to the District in the fall of 2012.  If so, the Parties agree to develop an IEP for the 2012-13 school year that will supplant the provisions of this Agreement.  The parents agree to fully cooperate with this IEP development and that this IEP development will be conducted under the

> IEP review and reevaluation provisions of the IDEA. The
> parents agree to provide the District copies of review of any
> educational records, any necessary parental consent in
> order to complete any reevaluation requested by the IEP
> team. Any reevaluations and revisions of the 2012-2013
> IEP will be made in accordance with federal and state law.
> The Parties specifically agree that placement at DA is not
> the Student's placement for purposes of IDEA's "stay-put"
> provisions and that her stay-put placement in the event any
> dispute arises at the conclusion of this Agreement will be the
> program proposed by the IEP team through the IEP process.

(*Id*. at 4.)

In the spring of 2012, Plaintiffs requested that the District renew the Settlement for the 2012-13 school year. (Compl. ¶ 14.) The District refused and instead developed an IEP placing Taylor at Cherokee Trail High School, a large public high school in the District. (*Id*. ¶ 15.) Plaintiffs rejected the IEP and sent a 10-day notice to the District of their intent to place Taylor at Denver Academy and seek reimbursement for the costs. (*Id*. ¶ 16.)

On November 16, 2012, Plaintiffs filed a request for a Due Process hearing pursuant to 20 U.S.C. § 1415. (Compl. ¶ 17.) A Due Process Hearing was held on February 26-28, 2013. (*Id*. ¶ 18.) On April 19, 2013, the Administrative Law Judge ("ALJ") issued his Decision which found: (1) the District failed to adequately assess Taylor in all areas of suspected disability which materially and adversely affected the development on the May 30, 2012 IEP; (2) the District failed to offer Taylor a Free Appropriate Public Education ("FAPE") as required by the IDEA; and (3) placement at Denver Academy "is reasonably calculated to confer educational benefit in the absence of an offer of FAPE." (ECF No. 1-1 at 16.) The ALJ ruled that Plaintiffs were "entitled to reimbursement of the cost of tuition and any related services associated with the

placement of [Taylor] at Denver Academy during the 2012-2013 school year." (*Id.*)

On June 17, 2013, Plaintiffs filed a Complaint for Mandatory Preliminary Injunction which brings one claim seeking an injunction which mandates that the District pay the costs of maintaining Taylor's education at Denver Academy from the date of the ALJ's decision (April 19, 2013). (Compl. pp. 7-8.) Contemporaneous with the filing of the Complaint, Plaintiffs filed a Motion for Mandatory Preliminary Injunction ("Motion"). (ECF No. 4.) The District responded to the Motion on June 21, 2013. (ECF No. 9.) Plaintiffs filed their Reply Brief on June 26, 2013. (ECF No. 10.) A hearing on the Motion was held on for July 12, 2013. (ECF No. 14.)

## II. LEGAL STANDARD

In a traditional motion seeking preliminary injunctive relief, the movant must satisfy the following four-part test: (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

Plaintiffs contend that this standard is not applicable here, because the IDEA's "stay put" provisions function as an automatic injunction. (ECF No. 10 at 7.)

The Tenth Circuit has not explicitly addressed the issue of whether a court considering a request for injunctive relief involving the IDEA's stay-put provision needs

placement of [Taylor] at Denver Academy during the 2012-2013 school year." (*Id.*)

On June 17, 2013, Plaintiffs filed a Complaint for Mandatory Preliminary Injunction which brings one claim seeking an injunction which mandates that the District pay the costs of maintaining Taylor's education at Denver Academy from the date of the ALJ's decision (April 19, 2013). (Compl. pp. 7-8.) Contemporaneous with the filing of the Complaint, Plaintiffs filed a Motion for Mandatory Preliminary Injunction ("Motion"). (ECF No. 4.) The District responded to the Motion on June 21, 2013. (ECF No. 9.) Plaintiffs filed their Reply Brief on June 26, 2013. (ECF No. 10.) A hearing on the Motion was held on for July 12, 2013. (ECF No. 14.)

## II. LEGAL STANDARD

In a traditional motion seeking preliminary injunctive relief, the movant must satisfy the following four-part test: (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

Plaintiffs contend that this standard is not applicable here, because the IDEA's "stay put" provisions function as an automatic injunction. (ECF No. 10 at 7.)

The Tenth Circuit has not explicitly addressed the issue of whether a court considering a request for injunctive relief involving the IDEA's stay-put provision needs

to apply the traditional four-part test.  However, it has recognized that IDEA's stay-put "has been construed to impose 'an automatic statutory injunction' requiring that the child's then-current educational placement be maintained . . . ." *Miller v. Albuquerque Pub. Schs.*, 565 F.3d 1232, 1252 n.13 (10th Cir. 2009); *see also Casey K. ex rel. Norman K. v. St. Anne Comm. High Sch. Dist. No. 302*, 400 F.3d 508 (7th Cir. 2005) ("The stay-put provision has been interpreted as imposing an automatic statutory injunction . . . , like the automatic stay in bankruptcy.").

At the hearing, the parties agreed that there has been no "stay put" determination in this case.  Therefore, the Court construes the instant Motion as an initial request for "stay put" relief.  In these circumstances, other circuits have held that the traditional test for injunctive relief is inapplicable.  *See Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036 (9th Cir. 2009) (a party seeking a stay put order does not to show irreparable harm, balancing of the equities, or satisfy the other standards). Because Plaintiffs are not attempting to enforce an existing "stay put" order, the Court finds that they need not satisfy the traditional test for injunctive relief.  *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1111-12 (9th Cir. 2010).  Rather, this case is governed by the automatic injunction provisions of the IDEA.  *Joshua A.*, 559 F.3d at 1037.

### III.  ANALYSIS

The key issue for purposes of the instant Motion is IDEA's "stay put" provision which provides, in pertinent part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement

>   of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).  The "stay put" provision was included in the IDEA to protect handicapped children and their parents during the review process.  *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996).

The federal regulations implementing IDEA provide:

>   (a) Except as provided in [the regulation specific to expedited hearings for disciplinary changes in placement], during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.
>
>   . . .
>
>   (d) If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of paragraph (a) of this section.

34 C.F.R. § 300.518.

The parties agree that, at the time the dispute about Taylor's IEP for the 2012-13 school year arose, Taylor's "stay put" placement was Cherokee Trail High School under the terms of the Settlement.  Thus, the parties agree that the District did not have any obligation to pay for Taylor's schooling at Denver Academy at the beginning of the

2012-13 school year.[1] The dispute between the parties revolves around the effect of the ALJ's April 19, 2013 decision.

Plaintiffs contend that this decision shifted Taylor's "stay put" placement from Cherokee Trail to Denver Academy pursuant to 34 C.F.R. § 300.518(d) and, from that date forward, the District had an obligation to pay for Taylor's schooling at Denver Academy. (ECF No. 5 at 8-9.) The District acknowledges that "[u]nder ordinary circumstances", the ALJ's decision would have required that Taylor's "stay put" placement shift to Denver Academy. (ECF No. 9 at 3.) However, it contends that Section 300.518(d) does not operate in this case because the parties had already "otherwise agreed" that Cherokee Trail would be Taylor's "stay put" placement for the duration of this dispute. (ECF No. 9 at 5.)

Given these arguments, it is clear that the key issue here is what the parties' intent was in entering into the Settlement. Specifically, the Court must first examine whether the parties intended to waive application of Section 300.518(d) by agreeing that Taylor's "stay put" placement would be Cherokee Trail for the duration of any dispute about the 2012-13 IEP process, regardless of any interim administrative decision. Because the Court concludes that the Settlement does not govern Taylor's "stay-put" placement for the duration of the dispute, the Court then analyzes the IDEA "stay put" regulations.

---

[1] If the District challenges the ALJ's decision and the Court ultimately concludes that the 2012-13 IEP did not provide a FAPE, Plaintiffs may be entitled to reimbursement for the entire school year. However, that issue is not presently before the Court.

7

A.     **Interpretation of the Settlement Agreement**

"Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law even when there are federal causes of action in the underlying litigation." *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001). Under Colorado law, the purpose of contract interpretation is to ascertain the intent of the parties by ensuring that contracts are construed "consistently with the well-established principles of interpretation." *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 973 (Colo. 2005).

Like with a contract, the Court must first examine the terms of a settlement agreement in an attempt to determine the parties' intent. *Id.*; *see also Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146,1154 (10th Cir. 2008). If the terms of the agreement are unambiguous, "the interpreting court's task is over", because "in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence." *Level 3 Commc'ns*, 535 F.3d at 1154.

A contract is ambiguous if it is "fairly susceptible" to more than one interpretation. *Id.*; *see also East Ridge*, 109 P.3d at 974-75. In determining whether an ambiguity exists, the court may look to the meaning of words with "reference to all contractual provisions and the nature of the transaction which forms the contract's subject matter." *In re Marriage of Thompson*, 802 P.2d 1189 (Colo. App. 1990); *May v. United States*, 756 P.2d 362, 369 (Colo. 1998). If a settlement agreement is ambiguous, "the meaning of its terms is generally an issue of fact to be determined in the same manner as other

factual issues." *East Ridge*, 109 P.3d at 974.  Whether a contract is ambiguous is a question of law.  *Level 3 Commc'ns*, 535 F.3d at 1155.

The relevant portion of the Settlement provides:

> The Parties specifically agree that placement at DA is not the Student's placement for purposes of IDEA's "stay-put" provisions and that her stay-put placement in the event any dispute arises at the conclusion of this Agreement will be the program proposed by the IEP team through the IEP process.

(ECF No. 9-1 at 4.)

The District contends that this provision "is plain, clear, and comprehensive" and "sets the stay-put placement for the duration of the dispute." (ECF No. 9 at 5.)  The Court agrees that the Settlement is plain and clear but disagrees that it sets the "stay-put" placement for the duration of the dispute.  The Settlement states only that the "stay-put" placement will be the program proposed by the IEP team through the IEP process—*i.e.*, Cherokee Trail—"at the conclusion of this Agreement".  (*Id.*)  The Settlement governed the 2010-11 and 2011-12 school years.  (*Id.*)  Thus, the plain language of the Settlement specifies only that the "stay-put" placement was Cherokee Trail at the end of the 2011-12 school year.

Despite the District's argument otherwise, the Court concludes that nothing in the Settlement suggests that the parties intended Taylor's "stay-put" placement to be Cherokee Trail for the duration of the dispute over the 2012-13 IEP.  Additionally, nothing in the Settlement suggests that Plaintiffs intended to waive application of Section 300.518(d).  At the hearing, the District argued that, had Plaintiffs intended to preserve their right to have an interim administrative decision shift the "stay-put" placement pursuant to Section 300.518(d), they could have insisted on inclusion of the

9

same in the Settlement. But the Court finds, based on the plain language of the Settlement, that the reverse is not only also true but presents an even stronger argument. That is, had the District intended for the "stay-put" placement to remain Cherokee Trail for the duration of the dispute and that Plaintiffs were waiving application of Section 300.518(d), *it* could have explicitly said so in the Settlement—but it did not.

The District argues that Plaintiffs derived the benefit of the Settlement by accepting payment for the 2010-11 and 2011-12 school years, and are now attempting to "eviscerate[] and nullif[y]" a key aspect of the Settlement. (ECF No. 9 at 5.) The District contends that, if the Court interprets the Settlement in the manner advocated by Plaintiffs, it does not receive any benefit from the Settlement. (*Id.*) The Court disagrees. But for the Settlement, Plaintiffs would have had a strong argument that Denver Academy was Taylor's "stay-put" placement at the beginning of the 2012-13 school year. However, because the parties had agreed that the placement resulting from the IEP process would be the "stay-put" placement at the time the dispute arose, the District was able to avoid paying Taylor's tuition at Denver Academy from the beginning of the 2012-13 school year until the ALJ's decision was issued on April 19, 2013. Additionally, by entering into the Settlement, the District avoided protracted litigation over Taylor's IEP for the 2010-11 and 2011-12 school years. Thus, even with the Court's decision that the Settlement's "stay-put" placement was not intended to supplant Section 300.518(d), the District still received a substantial benefit by entering into the Settlement.

Accordingly, the Court finds that the plain language of the Settlement does not support the District's contention that the parties "otherwise agreed" that Taylor's "stay-put" placement would be Cherokee Trail for the duration of the dispute over the 2012-13 IEP process. Thus, there is no reason that the regulations implementing IDEA would not govern the determination of Taylor's "current educational placement" for purposes of 20 U.S.C. § 1415(j).

**B.     IDEA's "stay-put" Regulations**

Section 300.518(d) expressly provides that an interim administrative decision, such as the ALJ's decision here, constitutes an "agreement" between the District and the parents. As the Settlement did not specify that Section 300.518(d) was abrogated, the ALJ's decision became a subsequent "agreement" between the parties by operation of law. *See K.D. ex rel. C.L. v. Haw. Dep't of Educ.*, 665 F.3d 1110, 1118 (9th Cir. 2011) (an ALJ's decision finding that the district's IEP did not offer the student a FAPE and the parent's placement was appropriate became an "agreement" for purposes of Section 300.518(a) and the parent's placement became the child's current educational placement). Because the ALJ's decision post-dated the Settlement, the ALJ's determination is the relevant "agreement" between the parties with regard to Taylor's "stay-put" placement. *See Mackey v. Bd. of Educ. for the Dist. of Arlington Cent.*, 386 F.3d 158, 163 (2d Cir. 2004) (holding that the most recent "agreement" between the school district and the parents is the child's current educational placement).

The Court therefore finds that Denver Academy became Taylor's "current educational placement" as of April 19, 2013. Once a court determines a student's

current educational placement, the party requesting "stay-put" relief is "entitled to an order without satisfaction of the usual prerequisites to injunctive relief." *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996). Accordingly, the Court concludes that the District is responsible for paying for Taylor's schooling at Denver Academy, as well as transportation costs, from April 19, 2013 through the end of this dispute.[2] *See L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 903 (9th Cir. 2009) ("Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal."); *Sudbury Pub. Schs. v. Mass. Dep't of Elementary & Secondary Educ.*, 762 F. Supp. 2d 254, 269 (D. Mass. 2010) (awarding tuition for private school placement to parents based on hearing officer's decision that student's IEP denied FAPE and current placement was appropriate).

## C. Attorneys' Fees and Costs

Plaintiffs also move for their attorneys' fees associated with bringing the instant action. (ECF No. 4 at 4.) The IDEA permits the Court to award attorneys' fees to a prevailing party who is the parent of a child with a disability. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). In similar cases, other courts have concluded that an award of attorneys' fees was warranted. *See, e.g., K.R. ex rel. M.R. v. Bd. of Educ. of Brentwood Union Free Sch. Dist.*, 66 F. Supp. 2d 444, 450 (E.D.N.Y. 1999) ("Although enforcement of the IDEA's stay-put provision ordinarily amounts to no more than

---

[2] The Court notes that the District has not yet filed any claims challenging the ALJ's decision, but in its papers and at the hearing, the District indicated that such challenge was likely. Therefore, the Court presumes that the dispute regarding the 2012-13 IEP process will continue.

preservation of the *status quo*, where the petition also seeks a substantive determination of which educational placement should be applied under the stay-put provision, the petitioner has requested relief on the merits.") (internal quotation marks omitted); *Bayonne Bd. of Educ. v. R.S. ex rel. K.S.*, 954 F. Supp. 933, 943 (D.N.J. 1997) (attorneys' fees awarded where court made a substantive determination of which educational placement should be applied under stay-put provision in light of terms of settlement agreement); *Student X v. N.Y.C. Dep't of Educ.*, 2008 WL 4890440 at *27 (E.D.N.Y. Oct. 30, 2008) ("Plaintiff did not seek merely to maintain the *status quo*, but litigated a substantive dispute over which placement applied.").

As the Court has held that Denver Academy is Taylor's current educational placement and ordered the District to pay for her schooling at Denver Academy until the dispute over the 2012-13 IEP process is resolved, the Court has little difficulty concluding that Plaintiffs are the prevailing party. Accordingly, Plaintiffs request for attorneys' fees is granted.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion for Mandatory Preliminary Injunction (ECF No. 4) is GRANTED;
2. The District shall pay Plaintiffs $11,847.81 for the cost of maintaining Taylor's placement at Denver Academy from April 19, 2013 through June 17, 2013;
3. The District shall pay tuition and transportation costs for Taylor's education at Denver Academy through the end of the dispute over the 2012-13 IEP process; and

4. Plaintiffs request for attorneys' fees is GRANTED.  Plaintiffs shall file a motion seeking fees, with the necessary supporting paperwork, not later than August 9, 2013.

Dated this 19th day of July, 2013.

BY THE COURT:

*(signature)*

William J. Martinez
United States District Judge